[Crim. No. 11.　First Appellate District.—August 30, 1905.]

## THE PEOPLE, Respondent, v. CHRISTOPHER FITZ-GERALD, Appellant.

CRIMINAL LAW—MURDER—SUFFICIENCY OF EVIDENCE.—Upon review of the evidence, held that it is sufficient to sustain a verdict of guilty of murder in the second degree, and to show that the killing was wholly unnecessary, in shooting an unarmed man in an intoxicated condition, and not in necessary self-defense.

ID.—INADMISSIBLE EVIDENCE—DECLARATION OF DECEASED TO HIS WIFE.—Where it appeared that prior to the homicide the wife of deceased was trying to get him away, evidence of what he said to her was properly excluded, there being no intimation in the question as to the nature of the statement sought to be elicited.

ID.—APPREHENSION OF BODILY INJURY—INAPPLICABLE INSTRUCTION—STRENGTH AND ACTIVITY OF PARTIES.—Where there was no evidence as to the relative size, strength, and activity of the parties an instruction that the jury should take the same into consideration in determining whether the defendant had reason to apprehend bodily injury from the defendant was properly refused; and error cannot appear in refusing it where the record does not show that it was requested by the defendant.

ID.—NEWLY DISCOVERED EVIDENCE—INSUFFICIENT AFFIDAVITS.—Affidavits of newly discovered evidence which are not shown in the record to have been offered or read on the motion for a new trial, and the contents of which would not justify a new trial, being designed merely to impeach a witness for the prosecution on a point which might have been fully shown at the trial, are insufficient to justify a new trial.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

E. D. Edwards, and E. A. Williams, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

COOPER, J.—Defendant was tried upon the charge of murder in killing with malice aforethought one Charles Slater on the eighteenth day of September, 1904.

The jury returned a verdict of murder in the second degree. Defendant made a motion for a new trial, which was

denied, and judgment was entered directing that he be imprisoned for ten years in the state prison at Folsom. This appeal is from the judgment and order denying a new trial.

The main contention of appellant is that the evidence does not support the verdict. The evidence shows that deceased and defendant were fellow-laborers at McKenzie's mill in Fresno County at the time of the homicide. There had been no previous trouble between them, and they had been on friendly terms prior to the killing. On Sunday morning, the day of the homicide, deceased had been drinking, but appears to have been in a humorous mood and trying to entertain his companions in various ways. He was telling stories, joking, scuffling with his fellow-laborers, and pretending to auction off the property of every one. He had torn the mosquito netting off defendant's bed, and had his feet up on the bed. Defendant requested him to take his feet off his bed, and deceased appears to have complied with the request. Defendant then, with the assistance of one Klepper, removed the bed some distance away. Up to this time no angry words were used by either party. After this, while deceased was being shaved, his chair either fell or was pushed over by some of the boys, and he rolled upon the ground. He appears to have been lying on the ground telling a humorous story when defendant passed. Deceased arose and ran after him, overtaking him, and pushed or struck him, after which he returned and wrestled with one Lewis.

While the manner of deceased was rough and boisterous, he appears to have been good-natured and to have been more in play than otherwise. Defendant appears, however, to have become impatient and angry because of the annoyances to which he was subjected and the acts and conduct of deceased. In his own language he states: "I then went on in the Barnes cabin and started to shave outside by the door; then I saw Klepper and several of the boys taking Slater away, and he tried to get away from Klepper, but they took him down to his own house. I then went back to the Long cabin, got my rifle, loaded it and said, 'If he don't let me alone I will put a half ounce of lead in him; if he wants a shooting scrape he can get it.' I then went into the Barnes cabin with the rifle, laid it down in the northwest corner of the cabin and went outside and commenced shaving." De-

ceased almost immediately afterwards came up unarmed, in an intoxicated condition, to defendant's cabin. Defendant went inside, deceased following after him, and defendant said twice in rapid succession, "Get out of here," and simultaneously raised the rifle, which he had loaded for the purpose, and fired the bullet which passed through the body of deceased, causing almost instant death. Deceased exclaimed with his last breath, "My God, boys, what did he do that for!"

The shooting appears to have been wholly unnecessary. Defendant had prepared the deadly rifle, and, not in necessary self-defense, he fired the shot at an unarmed man in an intoxicated condition. The jury, in its mercy, gave the defendant the benefit of his condition of mind caused by the annoyances to which he had been subjected. It reduced the degree, and thus in effect found that the killing was not willful, deliberate, and premeditated. The judge also appears to have dealt leniently with the defendant.

The evidence fully supports the verdict.

The witness Watson testified to the effect that a short time before the homicide deceased was between two of the cabins, and his wife was trying to get him away. The defendant's counsel then asked the witness the following question: "At the time Mrs. Slater was there, what, if any, statement was made by Mr. Slater to Mrs. Slater?" The court correctly sustained an objection to the question. It does not appear that any statement was made, and no intimation is made in the question as to the nature of the statement sought to be elicited. If the statement was made, and was as to some matter not connected with the homicide, it was clearly inadmissible.

The court refused to instruct the jury: "In determining whether the defendant had reason to apprehend that he was about to receive bodily injury from the deceased at the time the fatal shot was fired, the jury may take into consideration the relative size, strength, and activity of the respective parties." There was no evidence in the record as to the relative strength and activity of the parties. Not only this, but the record does not show that the instruction was requested by defendant.

The last contention of defendant is that the court erred in denying his motion for a new trial on the ground of newly discovered evidence. We find certain affidavits in the record, but there is not a word showing or tending to show that they were offered or read by defendant on his motion for a new trial. But we have examined them and find nothing that would have justified the court in granting a new trial on this ground. They are all to the point that defendant has discovered evidence which would tend to impeach the witness Michael Fitzgerald (who testified for the prosecution), by showing that at the time of the homicide Fitzgerald was intoxicated to such an extent that he could not have known the facts concerning the homicide. The defendant's counsel, in cross-examination of the witness Fitzgerald, asked him if he had been drinking that morning, and the witness answered, "Nothing but coffee." If it was true that the witness was intoxicated to such an extent as to affect his credibility it could easily have been shown at the trial. There were many parties present at the homicide and who testified. Defendant called some of them, among whom was Michael Fitzgerald, the witness sought to be impeached. It is said in *People* v. *Warren,* 130 Cal. 685, [63 Pac. 86] : "A motion for a new trial upon the ground of newly discovered evidence is looked upon with suspicion and disfavor, and the party who relies upon such ground must make a strong case, both in respect to diligence on his part and as to the truth and materiality of the evidence; and if he fails in either respect his motion must be denied."

The judgment and order are affirmed.

Hall, J., and Harrison, P. J., concurred.